# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMALIA LUCATERO PEREZ, individually and as Successor in Interest to the Estate of JACQUELINE SANCHEZ, decedent; ARNULFO SANCHEZ,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY, et al.,<br><br>Defendants. | CASE NO. 1:10-cv-02213-LJO-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT FORD MOTOR COMPANY'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT BE GRANTED**<br><br>(Docket No. 31)<br><br>**OBJECTIONS DUE: 10 days** |

## I. INTRODUCTION

On December 21, 2011, Defendant Ford Motor Company ("Ford") filed a motion for determination of good faith settlement. (Doc. 31.) The court has reviewed the motion as well as the supporting documentation and finds that the matter is suitable for decision without oral argument pursuant to Local Rule 230(g). Accordingly, the January 25, 2012, hearing is VACATED.

For the reasons set forth below, the Court RECOMMENDS that Ford's motion for determination of good faith settlement BE GRANTED.

## II.  FACTUAL BACKGROUND

This action arises from an auto accident that occurred on August 29, 2009, involving a 1999 Ford Explorer driven by Plaintiff Amalia Lucatero Perez ("Amalia") and containing passengers

Jacqueline Sanchez ("Jacqueline") and Arnulfo Sanchez ("Arnulfo"), Plaintiff's children. The accident occurred at 5:25 p.m., in the southbound lanes of State Route 99 in an unincorporated area of Stanislaus County, California. (Doc. 31-1, p. 2, 10.) The traffic collision report ("TCR") indicates that the left rear tire of the Ford Explorer ruptured, causing rapid tire deflation. (Doc. 31-1, p. 17.) Plaintiff applied the brakes and improperly turned the vehicle to the right, losing control. (Doc. 31-1, p. 17.) The vehicle traveled in a southwesterly direction, left the west roadway edge, and overturned. (Doc. 31-1, p. 17.) Amalia's daughter, Jacqueline, was ejected from the vehicle during the accident and died from injuries she sustained as a result. (Doc. 31-1, p. 14, 17.)

The TCR indicates that Amalia reported that she placed Jacqueline in her seat and attached her seatbelt. (Doc. 31-1, p. 11.) Amalia confirmed that Jacqueline's seatbelt was attached prior to entering the highway. (Doc. 31-1, p. 11.) However, Arnulfo and Amalia both reported to the investigating officer that Jacqueline had a habit of removing her seatbelt when traveling in the vehicle. (Doc. 31-1, p. 12.) Amalia reported that she often had to stop her vehicle to coax Jacqueline to secure her seatbelt before continuing. (Doc. 31-1, p. 12.) The TCR states that Jacqueline was not wearing her seatbelt restraint at the time she was ejected from the vehicle. (Doc. 31-1, p. 17.)

On April 23, 2010, Plaintiffs filed a complaint alleging claims against Ford and Goodyear Dunlop Tires North America, Ltd. ("Goodyear") for Strict Product Liability, and against all defendants (Ford, Goodyear, Jalo's Auto Sales #2, Raymundo Covarrubias, individually and dba Jalo's Auto Sales #2) for Negligence [Product Liability] and Negligent Infliction of Emotional Distress. Additionally, Plaintiffs sought punitive damages against defendant Ford only. On November 29, 2010, the action was removed to federal court on the basis of diversity of citizenship.[1]

Following participation in voluntary mediation on November 10, 2011, Plaintiffs agreed to settle their claims against Ford. The settlement is contingent upon a determination of good faith settlement pursuant to the California Code of Civil Procedure. As a result, Ford filed a motion for determination of good faith settlement on December 21, 2011. (Doc. 31.) In conjunction with its

---

[1] Defendants Jalo's Auto Sales #2 and Raymundo Covarrubias were dismissed from the lawsuit prior to removal. (Doc. 1, p. 3, ¶ 11.)

2

motion for a determination of good faith settlement, Ford requested that the parties' settlement agreement be filed under seal; the Court granted Ford's request. (Doc. 33.)

### III.  DISCUSSION

**A.  Legal Standard**

A motion for good faith settlement is governed by California Code of Civil Procedure §§ 877 and 877.6, which apply to federal court diversity proceedings and authorize the Court to determine whether a settlement agreement was entered into in good faith.[2] *See Slottow v. Am. Cas. Co. of Reading, Penn.*, 10 F.3d 1355 (9th Cir. 1993) (en banc). In relevant part, section 877 states as follows:

> Where a release, dismissal with or without prejudice, or covenant not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligators mutually subject to contribution rights, it shall have the following effect:
>
> (a) It shall not discharge any such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is greater.
>
> (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

Cal. Civ. Proc. Code § 877; *see also Rutgard v. Haynes*, 61 F. Supp. 2d 1082, 1085 (S.D. Cal. 1999). The legislative objectives in promulgating Section 877 were "equitable sharing of costs among the parties at fault, and . . . encouragement of settlements." *River Garden Farms, Inc. v. Super. Ct.*, 26 Cal. App. 3d 986, 993 (1972). However, "equitable sharing" does not require *equal* sharing. *Id.*

The California Supreme Court has held that "[t]he good faith provision of section 877 mandates that the courts review agreements purportedly made under its aegis to insure that such settlements appropriately balance the contribution statute's dual objectives." *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 494 (1985). In determining whether the settlement is made in good faith, the factors to be considered include the following:

---

[2] Section 877.6 provides that good faith settlements is subject to approval of the court through noticed motion and hearing. *See* Cal. Civ. Proc. Code § 877.6(a)(1). Section 877.6 is the procedural vehicle under which Ford brings its motion.

3

    a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortuous conduct aimed to injure the interests of the non-settling defendants.

*Id.* at 499 (citations omitted).

    A party opposing the motion for good faith settlement bears the burden of establishing a lack of good faith. *Id.* at 493; *see also* Cal. Civ. Proc. Code § 877.6(d). An opposing party "must demonstrate . . . that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Id.* at 499-500. The determination as to whether a settlement is made in good faith is a matter within the court's discretion. *Id.* at 502.

**B.    Analysis**

    As set forth above, in determining whether a settlement falls within the reasonable range, the court should weigh the amount of the settlement in light of (1) the rough approximation of the plaintiff's potential recovery and the settlor's proportionate liability in view of the settlement amount; (2) a recognition that a settlor should pay less in settlement than if found liable at trial; (3) financial conditions and insurance policy limits of the settling defendants; and (4) any evidence, or absence of evidence, of collusion, fraud or tortious conduct between the settling parties aimed at making non-settling parties pay more than their fair share. *Tech-Bilt, Inc.*, 38 Cal. 3d at 499.

    One of the most important *Tech-Bilt* factors is the proportion of liability. *Toyota Motor Sales U.S.A., Inc. v. Super. Ct.*, 220 Cal. App. 3d 864, 871 (1990). A "settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Torres v. Union Pac. R. R. Co.*, 157 Cal. App. 3d 499, 508 (1984).

    Plaintiffs have asserted a product liability claim against Ford under a theory of strict product liability. For purposes of strict product liability, a manufacturer may only be held liable if it manufactured a defective product, the defect existed at the time of manufacture, and the defect proximately caused an injury to the consumer. *Greenman v. Yuba Power Prods., Inc.*, 59 Cal. 2d 57, 62 (1963); *Barker v. Lull Eng'g Co., Inc.*, 20 Cal. 3d 413, 426-27 (1978). To establish proximate

1  causation, a plaintiff must prove that the product, as originally designed and manufactured, proximately caused the plaintiff's injuries. *Id*. at 432-33. A plaintiff must also prove that the product's design substantially contributed to the injuries suffered and that the circumstances establish that it is just to hold the defendant liable. *Bates v. John Deere Co.*, 148 Cal. App. 3d 40, 50 (1983). Finally, the plaintiff must establish that the disputed design, rather than the circumstances of the collision, was the proximate cause of the injuries suffered. *Endicott v. Nissan Motor Corp.*, 73 Cal. App. 3d 917, 926 (1977). If there are superseding factors that render a defective design immaterial, the plaintiff cannot recover. *Id.*

Ford asserts that it would have established that Jacqueline's failure to wear her seatbelt was the cause of her ejection and subsequent death and that Plaintiff's improper steering inputs following the tread separation of the tire caused the vehicle to roll over. Ford also asserts that, even if it would have been found strictly liable for a product defect, its proportionate share of liability would have been reduced by the comparative fault of others – namely that of Amalia. Thus, Ford's proportionate share of the liability is minimal at best. The Court finds that the amount of the settlement as set forth in the parties' sealed settlement agreement is within the reasonable range of Ford's proportionate share of comparative liability.[3] Further, the Court has considered that the settlement amount is less than the amount Ford would have paid had it been found liable. *Tech-Bilt, Inc.*, 38 Cal. 3d at 499.

With regard to consideration of Ford's financial condition and insurance policy limits, Ford does not dispute that it has sufficient finances and insurance to pay more than the settlement amount on any judgment that may be entered against it at the time of trial. However, the fact that the parties agreed to the settlement terms through the assistance of counsel after arms-length negotiations before a neutral mediator, indicates that Ford's ability to pay a larger amount has been balanced against the facts of the case and the degree to which Ford is liable. Therefore, the Court finds this factor does not weigh against finding that the parties have entered into a good faith settlement.

---

[3] As a condition of the parties' settlement, the amount of the settlement is to remain confidential. A sealed copy of the parties' settlement agreement has been filed under seal pursuant to the Court's order granting Ford's request to seal the document, and the Court has reviewed the amount of the settlement. (Doc. 34.)

Finally, there is no evidence of collusion, fraud, or tortious conduct aimed at injuring the interests of the other remaining defendant, Goodyear. Significantly, although the material terms of the settlement have been shared with Goodyear (*see* Doc. 31, Declaration of Saleem K. Erakat, ¶ 10), no opposition to Ford's motion has been filed. Accordingly, this factor also weighs in favor of finding that the parties have entered into a good faith settlement.

In sum, the factors considered above weigh in favor of granting Ford's motion for a determination of good faith settlement.

### IV.   RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that:

1. Ford's motion for determination of good faith settlement be GRANTED; and
2. Any and all claims for equitable indemnity or contribution against Ford be forever barred pursuant to California Code of Civil Procedure § 877.6(c).

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within ten (10) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 23, 2012**            /s/ Sheila K. Oberto
                                         UNITED STATES MAGISTRATE JUDGE